# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

DARREN IRVING,

       **Petitioner,**

v.                              **Case No.  3:12cv184/LC/CJK**

MICHAEL D. CREWS,

       **Respondent.**
_____/

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 14).  Petitioner replied.  (Doc. 17).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the court show that petitioner is not entitled to federal habeas relief, and that the petition should be denied.

BACKGROUND AND PROCEDURAL HISTORY

In August of 2008, petitioner was initially charged in Escambia County Circuit Court Case Number 08-CF-3353, with Dealing in Stolen Property by Trafficking (Count 1) and Fraud Upon Secondary Metals Recyclers – $300 or more (Count 2). (Doc. 14, Ex. A, p. 1).[1] The information alleged that petitioner unlawfully trafficked in copper cable, the property of General Electric, which petitioner knew or should have known was stolen; and that petitioner unlawfully and knowingly gave false verification of ownership of the copper and received $300 or more from a secondary metals recycler (GSI Recycling and Wise Recycling) in return for the copper. (*Id.*, pp. 1). An amended information was filed on February 24, 2009, charging petitioner with an additional second-degree felony – Grand Theft (over $20,000, but less that $100,000). (*Id.*, p. 3). Consistent with plea negotiations, the State filed a second amended information on March 6, 2009, which removed the Grand Theft charge. (*Id.*, p. 4 and 10-11). On March 9, 2009, petitioner entered a counseled no contest plea to Dealing in Stolen Property by Trafficking (Count 1) and Fraud Upon Secondary Metals Recyclers – $300 or more (Count 2), pursuant to a negotiated plea agreement memorialized in writing. (*Id.*, pp. 9-17 (plea colloquy) and pp. 19-22 (written plea agreement)). The Dealing in Stolen Property offense was a second-degree felony carrying a maximum possible sentence of 15 years in prison, and the Fraud offense was a third-degree felony carrying a maximum possible sentence of 5 years imprisonment. (*Id.*, p. 19). Petitioner's written plea agreement, memorialized in a form titled "Sentence Recommendation," provided, in relevant part, that petitioner's plea was "Straight Up to Court"; that the parties stipulated that there was a factual

---

[1]All references to exhibits are to those provided at Doc. 14, unless otherwise noted.

basis for petitioner's plea outlined in the arrest report, offense report, or probable cause affidavit; and that petitioner stipulated he owed restitution payable to General Electric in the amount of $76,727.20. (*Id.*, p. 19).

On March 9, 2009, the trial court accepted petitioner's plea after conducting a searching and extensive plea colloquy and determining that petitioner's plea was knowing and voluntary. (Ex. A, pp. 9-17). A sentencing hearing was held on May 28, 2009. The court noted that petitioner's maximum possible sentence was 20 years in prison. (*Id.*, p. 29). The State argued that an appropriate sentence was 12 years in prison. (*Id.*, p. 30). Defense counsel asked the court to consider sentencing petitioner to community supervision. (*Id.*, p. 31). Petitioner and his wife argued that petitioner should be given a lenient sentence because he was sorry for what he did, his participation in the crimes was the result of others taking advantage of him, and this was petitioner's first criminal offense. (*Id.*, pp. 31-32). After hearing the parties' arguments the court sentenced petitioner on Count 1 to 9 years in prison followed by 5 years probation, and on Count 2 to 5 years probation to run concurrent with the split sentence in Count 1. The court ordered restitution in the amount of $76,727.20 to be paid during the period of probation. (*Id.*, pp. 33-34). The court explained:

> This is a situation where he had an opportunity over a period of time to know what he was doing. When he said he didn't know what was going on, oh, he knew exactly what was going on, and he had many occasions to think about what he was doing. And at least, according to the PSI, on approximately 45 different occasions he made these transactions on this copper wire. So, you know, it's all about greed. You know, the truth of it is, Mr. Irving puts his wife in a bad situation and it's kind of pitiful, but it was an ongoing criminal enterprise that he was involved in and it's not making a mistake. It's over and over and over, doing the same thing and everybody is making the big money, selling the copper, and then all of a sudden, just as a matter of luck, they

all got caught.

(*Id.*, p. 32).

Judgment was rendered May 28, 2009. (*Id.*, pp. 37-43). Petitioner filed a notice of appeal even though he had expressly waived the right to appeal all matters including the issue of guilt or innocence, and even though he did not reserve the right to appeal any issues. (*Id.*, p. 51). Defense counsel filed an *Anders* brief, asserting that she could point to no possible arguments which might support the appeal. (Ex. B). Petitioner was provided the opportunity to file a *pro se* brief, but chose not to. (Ex. C). On March 9, 2010, the Florida First District Court of Appeal ("First DCA") per curiam affirmed the judgment without a written opinion. *Irving v. State*, 30 So. 3d 496 (Fla. 1st DCA 2010) (Table) (copy at Ex. D).

On November 18, 2010, petitioner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Ex. F, pp. 1-7). The circuit court summarily denied relief without an evidentiary hearing. (*Id.*, pp. 8-65). The First DCA per curiam affirmed without a written opinion, *Irving v. State*, 76 So. 3d 294 (Fla. 1st DCA 2011) (Table) (copy at Ex. G), with the mandate issuing January 17, 2012. (Ex. H).

On March 7, 2012, petitioner filed a Motion for Reduction or Modification of Sentence under Florida Rule of Criminal Procedure 3.800(c). (Ex. I). The circuit court dismissed the motion for lack of jurisdiction on March 20, 2012. (*Id.*).

Petitioner filed his federal habeas petition in this court on April 12, 2012. (Doc. 1, p. 1). The petition presents two grounds for relief: (1) "Counsel was ineffective for failing to investigate and refute State's evidence" and (2) "Counsel was ineffective for failing to contest the amount of restitution assessed to the defendant." (Doc. 1, pp. 5-8). Respondent argues that petitioner is not entitled to federal habeas relief, because

his claims were waived by virtue of his guilty plea and because the state court's denial of relief is consistent with clearly established Federal law. (Doc. 14, pp. 3-6).

## SECTION 2254 STANDARD OF REVIEW

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2] The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ

---

[2]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *Thaler v. Haynes*, 559 U.S. 43, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). If the state court decision is contrary

to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court, however, may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. *Knowles v. Mirzayance*, 556 U.S. 111, 122, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009).

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011) (*citing Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786,

178 L. Ed. 2d 624 (2011)).  The federal court  must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior Supreme Court decision.  *See Richter*, 131 S. Ct. at 786; *see also Gill*, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).  In sum, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  As with the "unreasonable application" clause, the federal court applies an objective test.  *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See Gill*, 633 F.3d at 1292.

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"). Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011). However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. 930, 954, 127 S. Ct. 2842. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. at 786.

## DISCUSSION

<u>Ground One</u>        "<u>Counsel Was Ineffective For Failing To Investigate And Refute</u>

State's Evidence."  Doc. 1, p. 5).

Petitioner alleges that prior to entering his plea, he and his attorney went over the State's discovery disclosures, including 45 receipts obtained from GSI and Weiss Recycling.  Petitioner alleges:

> Some receipts bore the signature of the Defendant but most did not.  When asked by counsel of record, Kelly M. Richards, how many times he went to these plants, the Defendant replied about fifteen times and only five (5) times with copper.  Counsel informed the Defendant that the State had approximately 45 receipts for copper.  Defendant advised counsel that the other 30 receipts were not his.

> Defense counsel asked the Defendant how much money he made from his transactions to which he replied about $2800.  The receipts the State obtained totaled more than $76,000.  Counsel failed to sort out, by independent investigation, exactly which transactions were Mr. Irving's and which were not.  Counsel's failure to diligently ascertain the facts to refute the State's evidence led the trial court to believe that all of the receipts belonged to Mr. Irving.  Counsel's deficient performance prejudiced the Defendant as evidenced by the extremely harsh sentence he received.  See *Strickland v. Washington*, 466 U.S. 668 (1984).

(Doc. 1, p. 5).  The only specific form of "independent investigation" petitioner proposes is "request[ing] a handwriting analysis of the State's receipts."  Petitioner asserts that "ha[d] the Defendant known that counsel was not going to challenge or refute the state's evidence he would not have entered a plea and would have insisted on going to trial."  (*Id.*, p. 6).  Within his discussion concerning counsel's failure to investigate the case, petitioner asserts:  "Counsel advised the Defendant to enter an open plea of guilty to the Court claiming that based on the fact that he has no prior criminal record the Court would sentence him to probation with restitution.  If not for counsel's claim, Defendant would not have pled but would have insisted on going to trial."  (*Id.*, pp. 5-6).

Respondent concedes that petitioner presented this claim to the state courts in his Rule 3.850 proceeding, and that the state courts adjudicated the claim on the merits. (Doc. 14, pp. 3-4).

A.     Clearly Established Federal Law

In determining the validity of a plea to a criminal charge, a plea of nolo contendere stands on equal footing with a guilty plea. *North Carolina v. Alford*, 400 U.S. 25, 35-36, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); *Hudson v. United States*, 272 U.S. 451, 47 S. Ct. 127, 129, 71 L. Ed. 347 (1926); *see also Florida v. Royer*, 460 U.S. 491, 495 n.5, 103 S. Ct. 1319, 1323 n.5, 75 L. Ed. 2d 229 (1983) (recognizing that "[u]nder Florida law, a plea of *nolo contendere* is equivalent to a plea of guilty."). "A guilty plea is an admission of criminal conduct as well as the waiver of the right to trial." *Finch v. Vaughn*, 67 F.3d 909, 914 (11th Cir. 1995) (*citing Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469, 25 L. Ed. 2d 747 (1970)). "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady* at 748. Accordingly, in the context of a guilty plea the standard for determining the validity of the plea is "whether the plea represents a voluntary intelligent choice among the alternative courses open to the defendant." *North Carolina v. Alford*, 400 U.S. at 31, 91 S. Ct. 160; *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). The assistance of counsel received by a defendant is relevant to the question of whether a defendant's guilty plea was knowing and intelligent insofar as it affects the defendant's knowledge and understanding. *See McMann v. Richardson*, 397 U.S. 759, 770-71, 90 S. Ct. 1441, 1448-49, 25 L. Ed. 2d 763 (1970).

Once a guilty plea has been entered by a criminal defendant, all

non-jurisdictional defects in the proceedings prior to the plea are waived, including all claims of ineffective assistance of counsel "except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary." *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000). As the Supreme Court summarized:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.

*Tollett v. Henderson*, 411 U.S. 258, 267, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973) (*referencing McMann v. Richardson, supra*); *see also Lefkowitz v. Newsome*, 420 U.S. 283, 288, 95 S. Ct. 886, 43 L. Ed. 2d 196 (1975) ("[T]he general rule is that a guilty plea, intelligently and voluntarily made, bars the later assertion of constitutional challenges to the pretrial proceedings.").

When a petitioner challenges the voluntariness of his plea based upon allegations of ineffective assistance of counsel, the two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applies. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985); *see also Premo v. Moore*, — U.S. —, 131 S. Ct. 733, 737-38, 178 L. Ed. 2d 649 (2011) (identifying *Strickland* as the clearly established federal law governing a habeas petitioner's challenge to his conviction obtained through a plea bargain). To obtain relief under *Strickland*, a petitioner must establish that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is

a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The focus of *Strickland*'s performance prong in a plea situation is "whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill*, 474 U.S. at 56-57 *(quoting McMann v. Richardson*, 397 U.S. at 771, 90 S. Ct. 1441). "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). "To impart such an understanding to the accused, counsel must, after making an independent examination of the facts, circumstances, pleadings and laws involved, offer his informed opinion as to the best course to be followed in protecting the interests of his client. *Id*. (*citing Walker v. Caldwell*, 476 F.2d 213, 217 (5th Cir. 1973), *in turn citing Von Moltke v. Gillies*, 332 U.S. 708, 721, 68 S. Ct. 316, 322, 92 L. Ed. 309, 319 (1948)).

"Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland* at 689. Representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused regarding the plea. *Stano v. Dugger*, 921 F.2d 1125, 1150-51 (11th Cir. 1991) (*citing McMann*, 397 U.S. at 774; *Tollett*, 411 U.S. at 267; *and Hill*, 474 U.S. at 56).

To meet *Strickland*'s prejudice prong in a plea situation, petitioner must

establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. "It is not enough for [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Petitioner must demonstrate a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Id.*, 474 U.S. at 58-59.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 131 S. Ct. at 788. As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id*. (citations omitted).

B.   Petitioner's Valid Guilty Plea Forecloses Federal Habeas Review Of His Challenge To Counsel's Failure To Conduct Additional Investigation Of The Receipts

In presenting the facts supporting Ground One, petitioner makes no attempt to connect the lack of a handwriting analysis to counsel's plea advice or to petitioner's ability to make an informed and conscious choice between accepting the prosecution's offer and going to trial. To the contrary, petitioner concedes that he was well aware of the receipts and of counsel's lack of further investigation at the time he entered his plea, and alleges no facts suggesting that the lack of additional investigation affected his ability to enter a knowing and voluntary plea. The record of petitioner's plea proceeding demonstrates that petitioner's plea was knowing and voluntary.

The written plea agreement petitioner signed contains a section titled, "Factual Basis," which provides: "The arrest report or offense report or probable cause affidavit which is a part of the court record filed with the clerk of the court is hereby incorporated by reference and agreed to by the defendant as a factual basis for this plea and/or the factual basis is as follows: Stipulated to by Parties." (Ex. A, p. 19). In the section of petitioner's plea agreement titled "Additional Terms of Plea Entry and Sentence Recommendation Agreed Upon by the State and Defendant", the agreement states: "Plea Straight Up to Court. **Defendant stipulates that he owes restitution payable to General Electric in the amount of $76,727.20." (*Id.*). Petitioner's written plea agreement contains a "Certification of Defendant", which provides, in relevant part:

> In addition to certifying to all terms, conditions, obligations, duties and rights stated in this Sentence recommendation, I hereby certify that I have read the information or indictment or I understand the charge(s) set forth in the information. . . . I understand all terms, conditions, obligations, duties, and rights that are listed below and that the sentencing Court is incorporating by reference this complete Sentence Recommendation as part of the judgment imposed by the Court. Each term, condition, obligation, duty and right has been explained to me by

my attorney. . . . I am satisfied with the attorney's advice and services
and my attorney has not compelled or induced me to enter into this
Sentence Recommendation by any force, duress, threats or pressure.

(Ex. A, p. 20).  The "rights" referenced in the above certification included, as relevant

here, the right to a jury trial, the right to compel or make any witnesses come to a trial,

the right to cross-examine witnesses who  testify against petitioner, and the right to

present any and all defenses petitioner may have.  (*Id*.).  Significantly, petitioner's

written plea agreement also certified:  "<u>I have reviewed the facts of my case(s) with

my attorney and I agree and stipulate there are sufficient facts available to the State

to justify my plea of guilty or nolo contendere to the charge(s)</u>."  (*Id*.) (emphasis

added).  Petitioner's written plea agreement further certified:  "I understand that an

order of restitution entered as a part of this Sentence Recommendation is as definitive

and binding as any other order of restitution and that it may be enforced as a lien or

judgment against me . . ." (*Id*., p. 21).  In the final section of petitioner's written plea

agreement titled "Acknowledgment of Defendant," petitioner certified:

By signing this Sentence Recommendation, I . . . agree that I have
read and understand the contents of this document . . . and that I have
discussed with my attorney all of the ramifications or consequences of
entering a plea of guilty or nolo contendere to these charges. . . . I am
satisfied with the attorney's advice and services and my attorney has not
compelled or induced me to enter into this Sentence Recommendation by
any force, duress, threats, pressure or promises.

(*Id*., p. 22).

The trial court conducted as extensive plea colloquy before accepting

petitioner's guilty plea:

THE COURT:  Yes.  This is a dealing in stolen property, a grand theft
of over 20, fraud concerning a recycling –

MR. SIMON [prosecutor]: Yes, sir.

THE COURT: – is the third count.

MR. SIMON: Judge, consist[ent] with our plea discussions, the State has filed an amended information just charging dealing in stolen property and fraud upon secondary metals recycler.

THE COURT: So, you are nol prosing [sic] basically which was the old Count 2?

MR. SIMON: Yes, and the amended information has just two counts.

. . . .

THE COURT: Okay. I've also been handed up a plea agreement in which the State has filed an amen[ed] information, and basically they dropped one of the charges in the old information, which is the – which is the grand theft of over 20,000. So, the new – the amended information is dealing in stolen property by trafficking, which is a 15-year felony, and fraud upon a secondary metal recycler, which is a third-degree felony. If you ran those consecutive, it would be a total of 20 years.

Now, under the agreement I've been handed up, the defendant would be entering a plea of nolo contendere as charged to those two counts. Nolo means the same thing as pleading guilty, and that it's a straight-up plea, and I will get to that in just a minute, and that this defendant stipulates that he owes restitution payable to General Electric in the amount of $76,727.20.

. . . .

Also, as a standard condition of the probation [sic], the defendant is waiving nine rights as spelled out in the plea agreement. They're actually labeled "A" through "I". They are all important, but "I" talks about the right to appeal all matters including the issue of guilt or innocence.

Now, what this means, Mr. Irving, in regard to a straight-up plea, is this, most plea agreements have both the plea to the charge and also what the sentence is going to be. Just like the one that was up here just [a] minute ago. I mean, it was – a person enters a plea, part of the plea agreement, it states exactly what the sentence is going to be and if I accept the plea, then that's the sentence I impose, the one that was agreed to.

Now, in your case, sir, in a normal plea agreement, you have certainty – you're certain what the sentence is going to be. Okay. In a straight-up plea, all you're doing is pleading guilty to these two charges. There is no certainty as to what the sentence is going to be. There is no agreement. There is no understanding. There are no promises and basically you are pleading to those two charges and you are hoping for the best. You could be sentenced up to 20 years in the state prison.

Now, I don't know what you're going to be sentenced to because I don't really know anything about you on a personal level. The presentence investigation is going to give me some information about your background. It is not going to be your life story. It is going to be some factual information which you'll have a chance to look at it and add to it or delete from it.

But based upon the presentence investigation and based upon the aggravation and mitigation of the charges, then [I would] impose the sentence after we get the presentence back.

. . . .

I can tell this, sir, I promise you – I don't promise you anything and if anybody told you out in the hallway or some friends or whoever told you that, hey, it's going to be this or it's going to be that, sir, they don't know what they're talking about because there is no agreement. There is no understanding and there is no – there's no thoughts about what a sentence is going to be.

Now, based upon that, sir, is that your understanding of what you

are doing in regard to a straight-up plea? Is that the way you understand it?

THE DEFENDANT: Yes, sir.

THE COURT: That's the way you understand it?

THE DEFENDANT: Yes, sir.

. . . .

(Defendant sworn)

. . . .

THE COURT: Okay. Now, you signed the plea agreement; is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: You can put your hand down, sir. And you had a chance to go over it with your lawyer before you signed it?

THE DEFENDANT: Yes, sir.

THE COURT: And you understood it?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Did anybody force you to sign the plea agreement?

THE DEFENDANT: No, sir.

THE COURT: Did you go over the nine rights that you are waiving by entering your plea?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you understand those nine rights?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  And you understand what I said about a straight-up plea as opposed to a plea agreement that has both the plea and the sentence in it, you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  That's what you want to do?

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  All right.  Do you think this plea agreement, Mr. Irving, is in your best interest considering all of the circumstances?

THE DEFENDANT:  Yes.

THE COURT:  Do you want to stick with this plea agreement?

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.  Based upon that, Mr. Irving, it is a two-count information, dealing in stolen property by trafficking and fraudulent – fraud upon a secondary metal recycler with $300 or more, and these are the result of – they got the factual basis or it's been stipulated to that's a result of some copper out at the GE plant.

So, based upon that, sir, what's your plea to those two counts, sir?

THE DEFENDANT:  No contest.

(Ex. A, pp. 10-16).

Petitioner cannot show that his plea was involuntary based upon matters known

to him at the time he decided to plead guilty. Petitioner went through the State's discovery with his attorney, knew the transactions the State attributed to him, knew of counsel's failure to obtain a handwriting analysis, and still chose to accept the plea agreement instead of going to trial. Petitioner's claim that trial counsel failed to adequately investigate the case concerns a non-jurisdictional matter unrelated to the voluntariness of petitioner's plea and is waived by petitioner's guilty plea. Petitioner is not entitled to federal habeas review on his claim concerning counsel's lack of additional investigation.

Petitioner's claim that his plea was induced by counsel's promise that the court would sentence him to probation with restitution is discussed below.

C.       Federal Review of State Court Decision

The state court denied relief on petitioner's claim – both concerning counsel's alleged failure to investigate and counsel's alleged promise of a sentence of probation – without an evidentiary hearing in a written order discussing the two-pronged test for ineffective assistance of counsel claims articulated in *Strickland v. Washington*. After discussing the *Strickland* standard, the court denied relief as follows:

> In his first claim for post-conviction relief, the Defendant claims that his counsel was ineffective for failing to investigate and refute the State's evidence. The Defendant explains that 45 receipts were provided by the State in discovery, but that "*Defendant advised counsel that . . . 30 receipts were not his.*" (Emphasis added). The Defendant alleges that his counsel "failed to sort out, by independent investigation, exactly which transactions were Mr. Irving[']s." The Defendant claims that counsel was deficient for not requesting a handwriting analysis because he informed his counsel that "many of the receipts that bore his name was not his signature." The Defendant states that "[t]he evidence would have shown that less than half of the State's receipts actually belong to Mr. Irving." Motion, at 3.

Initially, the court finds that whether there is sufficient evidence to sustain a conviction is an issue that could have been litigated at trial and upon direct appeal. Thus, a challenge to the sufficiency of the evidence is not a valid rule 3.850 claim. Johnson v. State, 985 So. 2d 1215 (Fla. 1st DCA 2008). Moreover, it is well established that "a plea of nolo contendere admits the facts for the purpose of the pending prosecution and is the same as a guilty plea insofar as it gives the court the power to punish." Mills v. State, 840 So. 2d 464, 466 (Fla. 4th DCA 2003) (citations omitted). By entering a plea of nolo contendere, the Defendant admitted the facts alleged in the information. Vernold v. State, 376 So. 2d 1166 (Fla. 1979); Attachment 3.

By its very terms, rule 3.850 provides that "[t]his rule does not authorize relief based on grounds *that could have or should have been raised at trial* and, if properly preserved, on direct appeal of the judgment and sentence." Fla. R. Crim. P. 3.850(c) (emphasis added). The Defendant is not allowed to go behind the plea and raise issues that were known at the time the plea was entered. Gidney v. State, 925 So. 2d 1076 (Fla. 4th DCA 2006). All of Defendant's claims that his counsel should have conducted a more through [sic] investigation or presented the defenses described in his motion are attempts to go behind his plea. Indeed, the Defendant explains that *he himself* apprised his counsel of the possible defenses described. Motion, at 3-4. "Thus, the appellant cannot assert that his plea was not knowingly and voluntarily entered where he concedes he was well aware of his counsel's deficiencies prior to the entry of his plea." Davis v. State, 938 So. 2d 555, 557 (Fla. 1st DCA 2006).

. . . . [Excerpts from petitioner's plea colloquy omitted]

As the First District Court of Appeal recently explained:

By entering a plea to the charges, Appellant waived his right to have counsel investigate or put forward a defense, including filing motions to suppress. Davis v. State, 938 So.2d 555, 557 (Fla. 1st DCA 2006) ("An appellant is not entitled to go behind sworn representations

made to the court in a postconviction proceeding."). Where a defendant enters a plea and swears that he is satisfied with his counsel's advice, he may not later attack counsel's effectiveness for failure to investigate or defend the charge. As the Florida Supreme Court stated more than two decades ago, "claims regarding ineffectiveness of counsel's assistance . . . are an attempt to go behind the plea. . . . By insisting on pleading guilty . . . [appellant] rendered any further investigation pointless." Stano v. State, 520 So.2d 278, 279-80 (Fla. 1988).

Clift v. State, 43 So. 3d 778 (Fla. 1st DCA 2010).

In this case, the Defendant waived his "right to present any and all defenses I may have." Attachment 4. The Defendant stated under oath that he reviewed his plea agreement with his attorney, including the nine enumerated rights that were specified in the plea agreement as being waived. Attachment 5. The Defendant's written plea agreement, which the Defendant signed, states "If represented by an attorney, I am satisfied with the attorney's advice and service. . . ." Attachment 4.

True, a defendant can challenge the factual basis for his plea in a rule 3.850 motion. Harris v. State, 32 So. 3d 197 (Fla. 4th DCA 2010). However, such a claim may be refuted by attachment of discovery documents – such as police report, probable cause affidavits, or deposition – establishing that a factual basis actually existed. Id.; see also Benavidez v. State, 749 So. 2d 528, 529 (Fla. 2d DCA 1999) (Concerning claim that "trial counsel was ineffective for advising [defendant] to plea no contest to a crime that he did not commit and for which no factual basis was established," claim could be refuted "[i]f other documents in the court file, such as police affidavits, substantiate the factual basis for the offense, the court can . . . summarily deny [defendant's] claim and attach the supporting documents to its order.").

The record demonstrates that there was a factual basis for the Defendant's plea. According to the factual basis agreed to by the Defendant, a large amount of copper was stolen from General Electric.

Attachments 1 and 4. Records showed that the Defendant "transacted approximately $34,000 dollars of this material as scrap" and defendant "signed the secondhand metal transaction forms stating that he was the rightful owner of the property." Attachment 1.

The Defendant also alleges that his plea was involuntary, based on a statement from counsel that the Defendant would be sentenced to probation if he entered an open plea. This claim is refuted by the record. The Defendant entered his plea of nolo contendere "straight up" to the court. The record demonstrates the following colloquy took place between the Court and the Defendant:

. . . . [Excerpts from petitioner's plea colloquy omitted]

Thus, even assuming that Defendant's counsel did misadvise Defendant that he would only receive a probationary sentence, any prejudice was cured by the Court during the plea colloquy and did not affect the voluntariness of the nolo contendere plea. See Alfred v. State, 998 So. 2d 1197 (Fla. 4th DCA 2009). As the Fourth District Court of Appeal has explained, "[a] plea conference is not a meaningless charade to be manipulated willy-nilly after the fact; it is a formal ceremony, under oath, memorializing a crossroads in the case. What is said and done at a plea conference carries consequences." Scheele v. State, 953 So. 2d 782, 785 (Fla. 4th DCA 2007).

The Florida Supreme Court has stated that "A Defendant who is informed by the court during the plea colloquy that he may have to serve every day of a ten-year sentence could hardly reasonably rely on counsel's advice to the contrary." *State v. Leroux*, 689 So. 2d 235 (Fla. 1996). Similarly, the Defendant was informed by this Court as follows:

> There is no certainty as to what the sentence is going to be. There is no agreement. There is no understanding. There are no promises and basically you are pleading to those two charges and hoping for the best. *You could be sentenced up to 20 years in the state prison.*

<u>Attachment5</u>, at 5 (emphasis added).

> In light of the Court's explicit warning that the Defendant could
> be sentenced up to 20 years in state prison, Defendant could not
> reasonably rely on any advice from counsel to the contrary.  The
> Defendant is not entitled to relief on this claim.

(Ex. F, pp. 9-15) (footnote omitted).

The state court reasonably applied *Strickland* in rejecting petitioner's claim.

In *Blackledge v. Allison*, 431 U.S. 63, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977), the

Supreme Court stated:

> [T]he representations of the defendant, as well as any findings by the
> judge accepting the plea, constitute a formidable barrier in any
> subsequent collateral proceedings. Solemn declarations in open court
> carry a strong presumption of verity. The subsequent presentation of
> conclusory allegations unsupported by specifics is subject to summary
> dismissal, as are contentions that in the face of the record are wholly
> incredible.

*Id.*, 431 U.S. at 73-74; *see also United States v. McCord*, 618 F.2d 389, 393 (5th Cir.

1980) ("[A] defendant ordinarily will not be permitted to refute testimony given under

oath at a plea or sentencing hearing.").

As the state postconviction court reasonably determined, petitioner's claim that

his plea was induced by counsel's promise that he would be sentenced to probation

is conclusively refuted by petitioner's assertions in his written plea agreement and

during his plea colloquy that his plea was not induced by any promises, that he

understood there was no agreement, no understanding, no promise and no assurance

concerning the sentence the court would impose, and that he understood he could be

sentenced to 20 years in state prison.

The state court's rejection of petitioner's claim was not contrary to *Strickland*,

was not based on an unreasonable application of *Strickland*, and was not based on an

unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Ground One.

Ground Two        <u>"Counsel Was Ineffective For Failing To Contest The Amount Of Restitution Assessed To The Defendant."</u>  (Doc. 1, p. 7).

Petitioner faults trial counsel for failing to investigate and for failing to refute, at sentencing, the amount of restitution.  Petitioner relies on the allegations made in Ground One concerning counsel's alleged failure to investigate the receipts, and argues that counsel's conduct prejudiced him because by not contesting the receipts, more than $76,000 was assessed to him as restitution at sentencing.  Petitioner asserts that "had the Defendant known that counsel was not going to contest the amount of restitution he would have to pay, he would not have entered a plea and would have insisted on going to trial."  (Doc. 1, p. 7).  Petitioner further asserts that counsel was deficient for failing to ascertain the market value of the copper at the time of his offense, arguing that a proper investigation would have shown wide fluctuations in the price of copper.  Petitioner asserts that "had the Defendant known that this [amount of restitution] was going to be assessed, he would not have entered his plea and would have exercised his right to trial."  (*Id*., p. 8).

Respondent concedes that petitioner presented this claim to the state court in his Rule 3.850 proceeding, and that the state courts denied relief on the merits.  (Doc. 14, pp. 3, 4-5).

A.    Clearly Established Federal Law

The clearly established Federal law governing claims of ineffective assistance of counsel is set forth above.

B.    Federal Review of State Court Decision

The state postconviction court denied relief on this claim after identifying

*Strickland v. Washington*, as the controlling legal standard. (Ex. F, p. 9). The court explained:

> In this claim, the Defendant asserts that his counsel was ineffective for failing to contest the amount of restitution assessed. The Court would note that "a written plea agreement alone may refute a postconviction claim." Russ v. State, 937 So. 2d 1199, 1201 (Fla. 1st DCA 2006). The Defendant agreed, in his written plea agreement, to pay restitution in the amount of $76,727.20. Attachment 4.
>
> . . . . Having clearly agreed to $76,727.20 in restitution pursuant to his plea agreement, the Defendant cannot now go behind his plea and claim that his counsel was ineffective for failing to challenge this amount. Walker v. State, 720 So. 2d 1124 (Fla. 1st DCA 1998). The Defendant is not allowed to go behind the plea and raise issues that were known at the time the plea was entered. Gidney v. State, 925 So. 2d 1076 (Fla. 4th DCA 2006). The Defendant's claim that "had the Defendant known counsel was not going to contest the amount of restitution he would have to pay, he would not have entered a plea. . ." is entirely without merit. The Defendant is not entitled to relief on this claim.

(Ex. F, pp. 15-16). The postconviction court attached to its order the arrest report (Attachment 1), the first amended information (Attachment 2), the second amended information (Attachment 3), petitioner's written plea agreement (Attachment 4), the transcript of petitioner's plea proceeding (Attachment 5), the transcript of petitioner's sentencing proceeding (Attachment 6), the judgment (Attachment 7) and the order of probation (Attachment 8). The First DCA summarily affirmed. (Ex. G).

The state court's rejection of petitioner's claim was not "contrary to" clearly established federal law, because the state court applied the two-pronged standard identified by the Supreme Court in *Strickland*, 466 U.S. 668 (1984). There is no Supreme Court case with materially indistinguishable facts dictating a different outcome than that reached by the state court.

The state court's rejection of petitioner's claim was not based on an unreasonable application of *Strickland*, or on an unreasonable determination of the facts. The undersigned has reviewed the state court record, including the attachments to the circuit court's order. The state court's factual findings are amply supported by the record and are presumed correct. Petitioner freely and voluntarily agreed, in both his written plea agreement and during his plea colloquy, that he owed and would pay $76,272.20 in restitution. At sentencing, the prosecutor noted as much, and described how restitution was prorated ("ranking system") among the co-defendants. The defense voiced no objection. (Ex. A, pp. 29-30). Instead, the defense argued for a non-incarcerative sentence, in part to pay restitution. (*Id.*, pp. 30-31). Petitioner cannot now go behind his own stipulation in the plea agreement and sworn testimony at the plea hearing, and challenge counsel's failure to refute the amount of restitution petitioner agreed to pay.

The state court's rejection of petitioner's claim was not contrary to *Strickland*, was not based on an unreasonable application of *Strickland*, and was not based on an unreasonable determination of the facts. Petitioner is not entitled to federal habeas relief on Ground Two.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted). Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1. That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Darren Irving* in the Circuit Court for Escambia County, Florida, Case No. 08-CF-3353 be DENIED, and the Clerk be directed to close the file.

2. That a certificate of appealability be DENIED.

At Pensacola, Florida this 17th day of December, 2013.

/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within

fourteen days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).